# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1   VIKTOR GJONAJ,

    Defendant.

_____/

CRIMINAL NO.
Case: 2:21−cr−20050
Assigned To : Parker, Linda V.
Referral Judge: Whalen, R. Steven
Assign. Date : 1/28/2021
Description: INFO USA v. GJONAJ (SO)

HON.

VIOLATION:

18 U.S.C. § 1343 – Wire Fraud

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. **Viktor Gjonaj (Gjonaj)** (D-1) was a resident of Shelby Township, Michigan, and was the owner of Title Plus Title Services (Title Plus).

2. **"Title Plus"** was a company created by Gjonaj and used by him to to trick victim investors into giving him money. GJONAJ falsely claimed that Title Plus served as the closing agency for commercial real estate transactions.

3. **"The Michigan Lottery" (Lottery)** was an organization responsible for managing and regulating the State of Michigan's lottery games, including the "Daily 3" and "Daily 4" games. Retail establishments, including party stores, were licensed by the Lottery to sell tickets for lottery games.

4. Gjonaj played the Daily 3 and Daily 4 games almost every day at various party stores in the Detroit Metropolitan area, at times buying more than $800,000 in lottery tickets per week.

## COUNT ONE
(18 U.S.C. § 1343 - Wire Fraud)

D-1 VIKTOR GJONAJ

The general allegations are included in this count.

5. In or about June 2016, through in or about August 2019, in the Eastern District of Michigan, Southern Division, defendant GJONAJ, having devised a scheme and artifice to defraud and for obtaining money by means of false and fraudulent material pretenses, representations and promises, did the following.

### The Scheme

6. In 2010 GJONAJ began playing the Lottery Daily 3 and Daily 4 games. In June 2016, he thought he had discovered a guaranteed way to win huge jackpots and substantially increased the number of times he played and amounts he spent.

7. In 2017, Gjonai began losing more money than he won and more money than he could afford to lose.

8. Instead of ending his gambling on the Lottery games, GJONAJ devised a scheme to trick individuals into giving him money. Using his experience as a real estate broker and investor, GJONAJ created Title Plus claiming that it would serve as the closing agency for real estate deals he was brokering.

9. GJONAJ, with intent to defraud, convinced investors that if they gave him money, he would invest it in lucrative real estate deals. In order to make the deals look legitimate, GJONAJ instructed investors to transfer money into Title Plus bank accounts.

10. In order to trick and induce investors into continuing to give him money, GJONAJ, described entirely fictitious real estate deals and often paid investors "profits" which he falsely claimed resulted from the sale of real estate.

11. In fact, Title Plus was a sham company that never closed a deal or facilitated a real estate transaction. All of the money paid to GJONAJ was used by him to play Lottery games and to cover his losses in those games.

12. By early 2019, Gjonaj was betting over $1million dollars a week on Michigan Lottery games using money fraudulently obtained from victims. In August 2019, Gjonaj's scheme to defraud unraveled resulting in over $19 million in losses to victims.

13. And for the purpose of executing the scheme, on July 3, 2017, GJONAJ transmitted and caused the transmission by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures or sounds, in the form of a wire transfer of funds in the amount of $1,600,000 from Citizen's Bank in Sterling Heights, Michigan to J.P. Morgan Chase in the State of Delaware.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – *Criminal Forfeiture*)

14. The general allegations and Count One of this Information are incorporated herein by this reference for the purpose of alleging forfeiture under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

15. Upon being convicted of violating Title 18, United States Code, Section 1343, defendant GJONAJ shall forfeit to the United States of America, under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The forfeiture in this case may include entry of a forfeiture money judgment against defendant GJONAJ in an amount up to the value of the property subject to forfeiture for the violations of conviction.

16. If, by any act or omission of the defendant, the proceeds of the offense cannot be located upon the exercise of due diligence, have been transferred, sold to, or deposited with a third party, have been placed beyond the jurisdiction of the court, have been substantially diminished in value, or have been commingled with other property which cannot be divided without difficulty, the United States of America shall seek to forfeit substitute property under Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), up to the value of the forfeitable property described above.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*John K. Neal*
JOHN K. NEAL
Assistant United States Attorney
Chief, White Collar Crimes Unit

*Karen L. Reynolds*
KAREN L. REYNOLDS (31029)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3220
(313) 226-9672
karen.reynolds@usdoj.gov

Date: January 28, 2021